IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

ERMA JEAN TRAMMELL,
ADC #702638                                                                           PLAINTIFF

1:04CV00057SWW/HLJ

LINDA DIXON, et al.                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of

>proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

## **DISPOSITION**

A trial was held in this case before the Court on October 22, 2007. Following a presentation of the testimony of the parties and witnesses, and submission of exhibits and post-trial briefs (DE ##132-135), the Court enters the following findings and recommendation.

### **I. Facts**

Plaintiff, a state inmate incarcerated at the McPherson Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations based on retaliation for the filing of grievances, by defendants Dixon, Capel, and Hearyman. Specifically, plaintiff alleges she was placed in administrative segregation (ad seg) in April, 2003, and was told by defendant Dixon, Chief of Security, that if she stayed in that area and worked on obtaining her class, defendant Dixon would make sure her class was returned. Plaintiff further alleges defendant Dixon improperly ordered her to her cell on June 25, 2003, and that following the writing of a grievance against Dixon, plaintiff was denied release from ad seg on June 26, 2003 by the Classification Committee. She contends that this denial was in retaliation for the filing of the

grievance against Dixon, a member of the Committee. The other named defendants are Maggie Capel, the deputy warden of the Unit in 2003 and a member of the Classification Committee, and Scott Hearyman, a classification officer at the Unit in 2003. Plaintiff asks for monetary relief from the defendants.

**A. Plaintiff's Testimony**

Plaintiff testified she has been incarcerated at the McPherson Unit for twelve years, and in April 2003, was housed in ad seg. While incarcerated in that area, she worked in a capacity known as "close custody", where she participated in various types of jobs such as cleaning different areas, preparing for the serving of breakfast, picking up trays, preparing for showers, etc. She stated on June 25, 2003, she was working in the area and the inmates were in an uproar because she refused some requests to pass property, in violation of Unit rules. Defendant Dixon appeared in the area and told plaintiff to leave and then to return to her room based on her argumentative behavior. Plaintiff then filed two grievances. The first, No. 03-1909 (Def. Ex. 7) alleged she was denied a shower but needed a shower because she had scrubbed many areas of the Unit that day and was dirty. Plaintiff stated she gave this grievance to Officer Bookout and marked it as an emergency. Bookout left to contact someone and returned forty-five minutes later to tell plaintiff defendant Dixon said she could have a shower.

The second grievance filed that evening by plaintiff, No. 03-1910, alleged plaintiff was promised by defendant Dixon that if she remained in ad seg, Dixon would return her class (Def. Ex. 9). Plaintiff stated in the grievance she had lost her class in July, 2002, and had not received it back because of retaliation from defendants Dixon and Hearyman, the former Warden Jim Cooksey, and other classification committee members. She stated she accepted defendant Dixon's proposition,

even though she knew she would be mistreated by staff and inmates during her work in that area, but defendant Dixon locked her down that evening prior to her classification review hearing, and she feared she would not be able to leave the ad seg area and get her class back. She asked that the issue be investigated by internal affairs and for return of her class.

Plaintiff testified she gave the second grievance to Brenda Dicus, a building lieutenant, who signed the grievance receipt in plaintiff's presence. Plaintiff stated she believed she would receive her class the following day after the classification review meeting, and be released from ad seg, since she had not received any disciplinary violations since she began working close custody in that area.

The next day, June 26, 2003, plaintiff appeared before the classification committee. One of the members, Mr. Miller, asked plaintiff if she was counseling mental health inmates, and plaintiff stated she was not. Plaintiff stated defendant Dixon then told her she never agreed to a proposition with plaintiff, and defendant Hearyman told her she "messed up" by filing the grievance. Another committee member told plaintiff she could not accept responsibility for her actions. Plaintiff denied raising her voice at the meeting or becoming hostile. The committee denied her request to be released from ad seg, and following the meeting, plaintiff filed a third grievance, No. 03-1939, alleging discrimination and retaliation by the classification committee (Def. Ex. 11, Plaintiff Ex. 4).

On cross-examination, plaintiff admitted she received several disciplinary violations from July 2002 until April 2003, and that all classification committee members voted for her to remain in ad seg in April 2003, and June 2003. She denied requesting close custody status in May, 2003, and did not inform the committee at that time of defendant Dixon's proposition to her. She stated she worked in close custody because she wanted to be released from ad seg and admitted that the decision to remove her from close custody and keep her in ad seg in June, 2003 was made by all the

classification committee members and not just the three named defendants.

Plaintiff stated other classification members knew defendant Dixon had the grievance at the meeting, and although defendant Dixon did not show it to all the members, she held the paper up and stated she did not make a proposition to plaintiff. Defendant Dixon showed the grievance to defendants Capel and Hearyman.

Plaintiff also admitted she is now Class 4, and received several disciplinary violations following the June, 2003 meeting. She also stated the three named defendants did not write those disciplinary violations against her. She admitted a requirement for receiving her class is that she remains off punitive (or punishment) for at least sixty days, and at the time of the June 26, 2003 hearing, she had not yet reached that sixty-day mark.

Plaintiff stated she addressed an Inmate Request form to defendant Capel on June 26, 2003, asking why she was returned to ad seg, and defendant's response on June 30, 2003 was that plaintiff's attitude and disposition was not becoming of an inmate who requests release from ad seg or a promotion in class (Def. Ex 10).

Grievance Officer Rose Higgins testified that once grievances are completed by inmates, they are sent to her office where she logs them in, determines if they constitute an emergency, and then investigates. Higgins stated the second grievance written by plaintiff on June 25, 2003 (No. 03-1910, was not processed correctly, because it was inadvertently placed in defendant Dixon's mail box. Higgins stated the warden and grievance officer typically participate in the resolution of grievances, and the inmates and employees are not permitted to discuss the grievances unless it relates to the investigation of them. In grievance 03-1939, plaintiff alleged she was denied classification in retaliation for filing grievance 03-1910 against defendant Dixon, and Higgins

investigated the retaliation allegations. She filed a report to Warden Maples on July 18, 2003 (Def. Ex. 11) in which she concluded that plaintiff's failure to receive her class was not the result of the grievance alluded to in the meeting but, rather, because of plaintiff's argumentative behavior. Higgins stated the grievance was mistakenly placed in defendant Dixon's mail box and she inadvertently looked at it during the meeting.

Higgins' report also included statements from defendants Capel, Dixon and Hearyman (Def. Ex. 11). According to defendant Hearyman's response to her investigation, during the June 26, 2003 meeting, defendant Dixon responded to plaintiff's allegations concerning the "proposition" she made, but plaintiff's class was not denied because of that statement. Hearyman wrote that defendant Capel stepped out of the meeting for a brief time and upon her return, recommended plaintiff's class be denied due to her arguing and aggressive stature. Finally, Hearyman's statement denied telling plaintiff she messed up by filing the grievance, and instead, states he told her that her attitude and arguing was the reason for his vote against her. Dixon's statement indicates plaintiff was denied due to her argumentative attitude and her behavior in the ad seg area the day before the meeting. Dixon also denied reading from the grievance at the meeting, but she said she corrected plaintiff concerning plaintiff's allegation against her in the grievance. Defendant Capel's statement to Higgins was that she initially complimented plaintiff on her hard work but was called out of the meeting and when she returned, found plaintiff being argumentative and verbally hostile toward defendant Dixon. Capel then told plaintiff her behavior would not be tolerated and she could not recommend a release from segregation.

Higgins testified that following the conclusion of the investigation, defendant Dixon was counseled about improperly receiving inmate grievances.

Cheryl Chapman, an officer in the ad seg unit in 2003, testified plaintiff was in ad seg in April 2003 for behavioral reasons and was a good worker in the close custody program. Chapman vaguely remembers the incident on June 25, 2003 when defendant Dixon told her to lock down the plaintiff following a heated discussion between plaintiff and another inmate.

Brenda Dicus was a building lieutenant at the Unit in 2003 who received plaintiff's grievance against defendant Dixon. She stated she was not going to be at the Unit the next day, so she made a judgment call to place the grievance in Dixon's box. She stated she did not intend to mishandle the grievance and did not treat plaintiff different from other inmates.

Inmate Angela Smith was in ad seg with plaintiff during the time in question, but did not recall the June 25, 2003 incident between plaintiff and defendant Dixon.

Inmate Alecia Rogers also was in ad seg with plaintiff during that time and witnessed plaintiff working long hours with no breaks. She considered the close custody work program a punitive method of working one's way out of ad seg.

Brenda Bookout worked in ad seg in 2003 and remembers plaintiff as an average worker. She stated for a short period of time close custody inmates cleaned until 10 or 11 p.m., but it did not last long. She stated she encountered no problems with plaintiff.

Patricia Turinsky also managed ad seg inmates during that time and knew plaintiff as a good worker. She also witnessed plaintiff acting in an aggressive manner on occasions.

Judy Doyle was a mental health counselor at the McPherson Unit in 2003 and described plaintiff as a "manipulative inmate." She stated whenever plaintiff received a disciplinary violation, she alleged retaliation because of a lawsuit and discrimination, and Doyle never found truth to plaintiff's allegations.

**B. Defendants' Testimony**

According to defendant Dixon, who was chief of security in 2003, plaintiff was initially placed in ad seg in April 2003 due to behavioral problems and her inability to adjust to general population. Dixon denied telling plaintiff she would make sure she could get her class back if she stayed in ad seg. Rather, she stated plaintiff approached her in April 2003 about her inability to make it in general population and asked defendant if she should stay in ad seg. Defendant Dixon told plaintiff maybe if she stayed in ad seg she would stay out of trouble long enough to be able to earn back her class, but Dixon said she did not promise plaintiff anything.

On June 25, 2003, defendant Dixon stated she was making rounds in ad seg where it was very noisy and inmates were complaining plaintiff was causing problems. Defendant told plaintiff to return to her cell, and plaintiff failed to obey that order. Defendant then escorted plaintiff to her cell. Defendant stated she left the Unit about 6 p.m. and returned the next morning about 7:55 a.m. for an 8 a.m. classification meeting.

On her way to the meeting, defendant Dixon picked up her mail and took it with her, reading parts of the emergency grievance filed by plaintiff before she entered the meeting. Defendant put it aside, and at the beginning of the meeting with plaintiff, defendant Capel commented on plaintiff's good work and attitude. Defendant Dixon stated at that point she informed the rest of the committee about plaintiff's behavior the previous day, and then defendant Capel was called out of the meeting. Plaintiff started to get angry with defendant Dixon at that point and stated they had a deal and she had written a grievance about it. Defendant replied that she had the grievance with her and that she does not make deals. After that, defendant Capel returned to the meeting, found plaintiff loud and argumentative, and when plaintiff told Capel she wrote a grievance on defendant Dixon, defendant

Capel stated, she "didn't give a ...." Defendant Dixon stated she never wrote a disciplinary violation on plaintiff and never treated plaintiff differently. She stated the committee's vote was based on plaintiff's behavior, disciplinary history, and attitude, and admitted that when plaintiff mentioned the grievance, she told plaintiff she did not make deals, and waived the grievance in the air. Defendant Dixon admitted it was a violation of ADC policy to refer to the grievance and she received a file note for mentioning it during the hearing. See plaintiff Ex. 5. Dixon further stated although plaintiff was an excellent worker, she had a lengthy disciplinary history because she has problems talking back to superiors.

Defendant Scott Hearyman was a member of the classification committee in 2003. He reviewed the close custody program, stating it was a way for ad seg inmates to work toward their class and good behavior by remaining discipline-free and by performing work within the area. The work included sweeping, mopping, cleaning, and helping with food trays and did not involve excessive work and included a lot of break time. As a general rule, defendant stated plaintiff was making progress and doing well, except he received reports of plaintiff's encounters with mental health inmates. The close custody program was a special project at the McPherson Unit, according to Hearyman, but it no longer exists.

Hearyman stated on June 26, plaintiff entered the meeting, smiling, and Capel complimented on her good work. Capel then asked defendant Dixon about security reports on plaintiff, when she was called out of the meeting. At that point, plaintiff stated she did not feel like she should have to counsel mental health inmates, and another committee member, Mr. Miller, stated she should not be doing that anyway. Hearyman stated at that point the discussion got heated and plaintiff brought up the issue how Dixon should not be propositioning her concerning her work toward her class. At

that point, Hearyman stated he became aware of plaintiff's grievance, because defendant Dixon sat next to him and he could see the cover sheet on her stack of mail. He stated he did not read the grievance and did not talk with Dixon about it. He stated plaintiff brought up the subject and in response, Dixon raised the paper and said she did not make deals. Hearyman stated he did not think any one else was aware of what Dixon was holding. He also denied telling plaintiff she messed up by filing the grievance. Defendant Capel then returned to the meeting, told plaintiff her behavior was not tolerated, and that she would remain on ad seg because of her aggressiveness.

Hearyman stated the main reason for his vote against plaintiff was her argumentative behavior in the hearing. Another reason, he stated, was because she was two days shy of the required sixty-day period since being incarcerated in punitive. Hearyman reviewed the paperwork from the prior classification hearings and noted on May 15, 2003, plaintiff requested to remain in ad seg and be assigned close custody. Def. Ex. 2.

Defendant Maggie Capel was the deputy warden of the Unit in 2003. She reviewed plaintiff's disciplinary history as noted on her status assignment sheet (Def. Ex. 1). She explained that once an inmate loses her class, assuming she behaves, she must wait sixty days from the last disciplinary or release from punishment, before she can be considered for a class promotion. On June 26, 2003, she was present at the beginning of the meeting at which she complimented plaintiff, and then was called out of the meeting. Upon her return, she observed plaintiff as rude, argumentative, and loud in her speaking to the committee. Capel stated she did not remember whether she said she "didn't give a ...." about the grievance, but that the class was not denied because of the grievance but, rather, because of plaintiff's attitude and behavior during the hearing. Capel stated plaintiff's conduct at the hearing was an example of a problem for some time.

Barbara Verser testified she was employed at the Unit in 2003 and served as a member of the classification committee. She recalled plaintiff as pleasant during the beginning of the meeting but became agitated when she was questioned about complaints about her from mental health inmates. Plaintiff then stated, according to Verser, she had things to talk with Dixon about, and Dixon stated she knew all about it because she had it right here, and raised a paper. Verser stated her vote to retain plaintiff in ad seg was based on the anger, hostility, rudeness, and overall behavior of the plaintiff before the committee.

Another member of the committee in 2003, Peggy Benish, testified she vaguely recalled the June 26 meeting and voted independently against plaintiff due to her disciplinary background and problems with inmates in the barracks. She did not remember a grievance being read at the meeting.

## II. Issues/Law

Otherwise proper acts by prison officials may be actionable under 42 U.S.C. § 1983 if conducted in retaliation for the exercise of a constitutionally-protected right. Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990). Protected conduct includes the filing of grievances pursuant to an established prison procedure. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). However, claims of retaliation will fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1993). In other words, an inmate must be prepared to establish that "but for" the retaliatory motive, the complained-about incident would not have occurred. Woods v. Smith, 60 F.3d 1161, 1166 (8th Cir. 1995). The Woods Court continued, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id., quoting Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

In this particular case, the Court notes that the testimony of the classification committee members, together with the reports collected following the grievance investigation, indicate plaintiff's request for a change in class was due to her behavior before the committee. In addition, other witnesses testified concerning plaintiff's argumentative nature and difficulty in getting along with others. Therefore, plaintiff can not show that <u>but for</u> the filing of the grievance against defendant Dixon, and <u>but for</u> Dixon's reference to it, she would have been granted her classification request.

Furthermore, despite plaintiff's claim that defendant Dixon read from the grievance at the hearing, the overwhelming evidence indicates the most Dixon did was acknowledge the filing of the grievance and deny she offered plaintiff a deal or proposition. Committee members Barbara Verser and Peggy Benish testified they were unaware of a grievance, or of it being read, and voted to keep plaintiff in ad seg due to her behavior. In addition, defendant Capel testified she was not present during the confrontation between plaintiff and defendant Dixon and later recommended plaintiff's stay in ad seg due to her argumentative behavior. Likewise, both defendants Hearyman and Dixon deny the grievance was read but, rather, referred to and waved in the air. The violation of a prison rule or policy by defendant Dixon, without more, does not establish a § 1983 violation. <u>Gardner v. Howard</u>, 108 F.2d 427, 430 (8th Cir. 1997). <u>See</u> also <u>Kennedy v. Blankenship</u>, 100 F.3d 640, 643 (8th Cir. 1996).

Finally, any allegation by plaintiff that her due process rights were violated also must fail. The fact that plaintiff was placed in ad seg on disciplinary status does not in and of itself support a constitutional claim. Plaintiff did not offer any evidence that the conditions of her confinement constituted an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>See</u>

Sandin v. Connor, 515 U.S. 472, 484 (1995).

### III. Conclusion

In conclusion, the Court finds that plaintiff failed to prove her allegations of Constitutional violations by a preponderance of the evidence and that her complaint against defendants Dixon, Hearyman, and Capel should be dismissed with prejudice. Accordingly,

IT IS, THEREFORE, ORDERED that plaintiff's complaint against defendants be DISMISSED with prejudice.

IT IS SO ORDERED this 28th day of January, 2008.

_____
United States Magistrate Judge